UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DEBORAH JONES, ) | Civil Action No.: 4:10-1876-MBS-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| SOUTH CAROLINA DEPARTMENT ) | |
| OF CORRECTIONS, a Political Subdivision) | |
| of the State of South Carolina; LEATH ) | |
| CORRECTIONAL INSTITUTION, a ) | |
| division of the South Carolina Department ) | |
| of Corrections; VALERIE HILL and ) | |
| KAREN HAIR, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.      INTRODUCTION**

Plaintiff originally filed this action in the Court of Common Pleas, Greenwood County South Carolina, under 42 U.S.C. § 1983, alleging she was disciplined by Defendants in retaliation for reporting an inappropriate relationship between a prison employee and an inmate in violation of her constitutional rights. Defendants removed the action to this Court. Presently before the Court is Defendants' Motion for Summary Judgment (Document # 17). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because the present Motion is dispositive, this Report and Recommendation is entered for review by the district judge.

**II.     FACTS**

At all times relevant to the allegations in the Complaint, Plaintiff was incarcerated in the South Carolina Department of Corrections (SCDC) at the Leath Correctional Institution (Leath).

Plaintiff claims that she was placed in the Special Management Unit (SMU) in retaliation for reporting inappropriate activity between an inmate and a correctional officer. Plaintiff approached Defendant Lieutenant Hill, a shift supervisor at Leath, and told her she had something to tell her about an officer and an inmate. Hill Aff. ¶¶ 2-3 (attached as an exhibit to Defendants' Motion). Plaintiff stated that she had seen Lt. McKinney and an inmate in the bathroom together. Hill Aff. ¶ 3. Plaintiff did not state that she had observed Lt. McKinney and the inmate kiss. Hill Aff. ¶ 3. Based on what Plaintiff told her, Lt. Hill understood that Plaintiff was not in the bathroom and she did not believe the Plaintiff would have been able to observe anything that occurred in the bathroom. Hill Aff. ¶ 4. Lt. Hill prepared an Incident Report and turned the Incident Report in to the Major. Hill Aff. ¶ 5. Lt. Hill had no additional involvement of any kind concerning any investigation. Hill Aff. ¶ 6.

Defendant Hair is an investigator with SCDC and was brought in to investigate Plaintiff's allegations concerning Lt. McKinney. Hair Aff. ¶¶ 2-3. Hair initially met with Plaintiff on July 22, 2008. Hair Aff. ¶ 4. According to her normal practice, Hair advised Plaintiff of her Miranda Rights. Hair Aff. ¶ 4. Plaintiff stated that on July 12, 2008, she was walking downstairs to ask the officer for Tylenol and observed Lt. McKinney kiss Inmate Heather Sawyer in the bathroom. Hair Aff. ¶ 4. Plaintiff stated that the kiss appeared to be a "quick peck" on the lips. Hair Aff. ¶ 4. Plaintiff stated that she had had conversations with other inmates concerning a possible relationship between Lt. McKinney and Inmate Sawyer. Hair Aff. ¶ 4.

Hair specifically asked Plaintiff if she had seen them actually kissing or actual physical contact and Plaintiff was adamant that she had seen this. Hair Aff. ¶ 5. Hair informed Plaintiff if she did not actually see kissing or physical contact to tell her and she would not be subject to

disciplinary charges or any other sanctions, but if they went forward to a polygraph exam and she did not pass she would be subject to a disciplinary offense. Hair Aff. ¶ 5. Plaintiff again was adamant that she had seen Lt. McKinney and Inmate Sawyer kissing. Hair Aff. ¶ 5. Based on Plaintiff's statements, Hair contacted Investigator Nicolee Coggins to arrange a polygraph examination. Hair Aff. ¶ 5. Coggins agreed to complete a polygraph examination of the Plaintiff on July 24, 2008. Hair Aff. ¶ 5.

Plaintiff was transported to Columbia on July 24 for the polygraph examination. Hair Aff. ¶ 6. Before the polygraph examination was administered, Hair again spoke with Plaintiff and asked if she was positive that she had actually seen Lt. McKinney and Inmate Sawyer kissing and again gave her the option to recant her statement without any risk of sanctions. Hair Aff. ¶ 6. She again told Plaintiff that if she went forward with the polygraph examination and failed, then she would be subject to charges. Hair Aff. ¶ 6. Plaintiff again confirmed that she had seen Lt. McKinney and Inmate Sawyer kissing. Hair Aff. ¶ 6.

Coggins interviewed Plaintiff and administered the polygraph exam to Plaintiff. Coggins Aff. ¶ 7(attached as an exhibit to Defendants' Motion). Coggins advised the Plaintiff of her Miranda Rights and Plaintiff signed a waiver of her rights. Coggins Aff. ¶ 7; Waiver of Rights (attached as an exhibit to Coggins Affidavit). Coggins next explained to Plaintiff about the polygraph exam and Plaintiff signed a form consenting to the polygraph. Coggins Aff. ¶ 7; Consent Form (attached as an exhibit to Coggins Affidavit); Plaintiff Dep. pp. 42, 52. On the consent form, Plaintiff indicated that she understood she had been requested to submit to a polygraph examination concerning "watching Lt. McKinney kissing Heather Sawyer on July 12." Coggins Aff. ¶ 7; Consent Form. The form states that the individual to be polygraphed has the right to refuse to take the polygraph exam,

to stop the examination at any time, and to refuse to answer any individual questions. Coggins Aff. ¶ 7; Consent Form. Plaintiff initialed each of these rights. Coggins Aff. ¶ 7; Consent Form. Plaintiff also initialed that she voluntarily agreed to take the polygraph examination and signed the form. Coggins Aff. ¶ 7; Consent Form.

Coggins noted deception in several questions during the exam. Coggins Aff. ¶ 8; Hair Aff. ¶ 8. Plaintiff was asked "Did you see Lt. McKinney kiss Heather Sawyer on her mouth?" and responded yes. Coggins Aff. ¶ 8; Hair Aff. ¶ 8. Coggins noted that the response to this question indicated deception by Plaintiff. Coggins Aff. ¶ 8; Hair Aff. ¶ 8. After a review and explanation of the results of the polygraph examination with Plaintiff, both Coggins and Hair spoke with Plaintiff. Coggins Aff. ¶ 8; Hair Aff. ¶ 8. Coggins asked Plaintiff why she did not pass the polygraph exam and Plaintiff stated that she actually did not observe Lt. McKinney kiss Ms. Sawyer. Coggins Aff. ¶ 8; Hair Aff. ¶ 8; Audio Recording (attached as an exhibit to Coggins Affidavit). Plaintiff stated that Lt. McKinney's back was toward her so that she could not see their faces. Coggins Aff. ¶ 8; Hair Aff. ¶ 8; Audio Recording. She stated that Lt. McKinney and Ms. Sawyer were standing extremely close to each other, but she did not have a side view as she previously stated. Coggins Aff. ¶ 8; Hair Aff. ¶ 8; Audio Recording.

Hair advised Major Rawski at Leath of the results of the polygraph exam and that Plaintiff admitted she did not actually see Lt. McKinney and Ms. Sawyer kissing. Hair Aff. ¶ 9. Plaintiff was then charged with Giving False Information. Hair Aff. ¶ 9. Plaintiff pled guilty to the disciplinary charge of Giving False Information and received 60 days of disciplinary detention, along with other sanctions. Hair Aff. ¶ 10.

Lt. Hill was not aware disciplinary charges had been placed against Plaintiff or that she had

been placed in SMU. Hill Aff. ¶ 6. Lt. Hill was off work for several days and Plaintiff was in SMU when she returned. Hill Aff. ¶ 6. Lt. Hill had no involvement with charges being placed against Plaintiff, whether Plaintiff was convicted of these charges, or how long Plaintiff remained in SMU. Hill Aff. ¶ 7. Likewise, Hair did not place disciplinary charges against Plaintiff and had no involvement in the decision whether Plaintiff would be charged. Hair Aff. ¶ 9. Rather, the decision was made by individuals at Leath. Hair Aff. ¶ 9.

It was later determined that Lt. McKinney and Ms. Sawyer were having an inappropriate relationship. Defendants' Responses to Plaintiff's Requests to Admit (attached as Exhibit A to Plaintiff's Response). Lt. McKinney's conduct violated SCDC Policy/Procedure Number ADM-1139 entitled Staff Sexual Misconduct with Inmates. Id. Lt. McKinney was allowed to resign her employment rather than be subjected to termination. Id.

### III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences

to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV.     DISCUSSION

#### A.     Plaintiff's Allegations

Plaintiff alleges that Defendants retaliated against her in violation of her First Amendment Right to freedom of speech by placing her in SMU for reporting the inappropriate relationship between Lt. McKinney and Ms. Sawyer. Complaint ¶ 10. Plaintiff brings these claims against SCDC, Leath, and Hill and Hair "in their official capacities as employees with the Leath [sic] and the SCDC and their sundry positions with that political body." Complaint ¶ 7. Plaintiff seeks a declaration that Defendants have violated her constitutional rights as well as monetary damages.

#### B.     Heck v. Humphrey

Defendants argue that Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based. The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, ... a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487. The United States Supreme Court specifically extended the Heck reasoning to the context of inmate disciplinary convictions in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). However, Heck does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions. See Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) ("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."). Rather, it applies in situations where the administrative action affected credits toward release based on good time served. Id. Here, Plaintiff suffered no consequence to her good time credits as a result of the disciplinary conviction. Thus, Heck is inapplicable.

C.     **"Persons" Under 42 U.S.C. § 1983**

Defendant SCDC argues that it is not a "person" under § 1983. It is well settled that states

and state agencies are not "persons" as defined by 42 U.S.C. §1983 and therefore, are not subject to suit under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Thus, SCDC, as a state agency, is not subject to suit under § 1983.

Furthermore, a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Id. Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. Id. Plaintiff brings her claims against Hair and Hill "in their official capacities as employees with the Leath [sic] and the SCDC and their sundry positions with that political body." Complaint ¶ 7. Therefore, Plaintiff's claims against these Defendants in their official capacities are without merit.

Finally, Leath is a facility. Inanimate objects such as buildings, facilities, and grounds do not act under color of state law. Hence, Leath also is not a "person" subject to suit under 42 U.S.C. § 1983. See Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir.1969) (California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D.Va.1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301(E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); Cf. Roach v. West Virginia Regional Jail and Correctional Facility, 74 F.3d 46, 48 (4th Cir.1996).

Because none of the Defendants are amenable to suit under 42 U.S.C. § 1983, summary judgment is appropriate as to all Defendants.

    **D.**    **First Amendment Retaliation Under 42 U.S.C. § 1983**

Assuming, arguendo, Plaintiff has stated a claim against Defendants Hill and Hair in their individual capacities, her claim still fails. Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

To state a First Amendment § 1983 retaliation claim, a plaintiff must establish three elements: (1) the plaintiff's right to speak was protected; (2) the defendant's allegedly retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. Johnson–El v. Beck, No. 3:11–cv–115–RJC, 2011 WL 1155679, at *3 (W.D.N.C. Mar.25, 2011) (citing Suarez Corp. v. McGraw, 202 F.3d 676, 685–86 (4th Cir.2000)). Even assuming Plaintiff's report of the inappropriate relationship amounts to constitutionally protected speech[1], Plaintiff fails to present

---

[1] "Although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment, other circuits have held that prison officials may not retaliate against a prisoner for filing grievances." Johnson–El v. Beck, No. 3:11–cv–115–RJC, 2011 WL 1155679, at *3 (W.D.N.C. Mar.25, 2011) (citing, inter alia, Hill v. Lapin, 630 F.3d 468, 472 (6th Cir.2010); Gee v. Pacheo, 627 F.3d 1178, 1189 (10th Cir.2010); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir.2006)); see also Gullet v. Wilt, 869 F.2d 593, at *2 (4th Cir.1989) (unpublished table decision) (stating that a prisoner's First Amendment rights are implicated by his claim "that he is being transferred because prison officials are retaliating for [his]

sufficient evidence to show that the actions by Defendants adversely affected that speech. Plaintiff alleges that Defendants placed her in SMU in retaliation for reporting inappropriate conduct. However, the record reveals that neither Hill nor Hair had any involvement in bringing disciplinary charges against Plaintiff or with her placement in SMU following her guilty plea to the charges. Hill's involvement ended when she prepared the Incident Report regarding what Plaintiff told her about Lt. McKinney and Sawyer and provided it to the Major. Hair's involvement ended when she reported the findings of her investigation to the Major. Plaintiff fails to show that Hill or Hair engaged in any retaliatory conduct. Accordingly, to the extent Plaintiff has asserted claims against Defendants Hair and Hill in their individual capacities, summary judgment is appropriate on those claims.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 17) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 20, 2012
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

numerous institutional grievances"). Plaintiff's alleged protected speech here is not the filing of a grievance, but rather the report of inappropriate conduct.